GEORGE HYLAND and JOHN HYLAND, as Administrators, etc., of GEORGE HYLAND, Deceased, Appellants, v. BERNARD BAXTER and Others, Respondents.

*Payments made by an administrator to an infant will not be allowed — when an equitable claim for supplies and necessaries furnished to the infant will be recognized — the Surrogate's Court has power to allow such a claim — sales from a trustee to infant beneficiaries will not be sustained.*

Upon an accounting of one George Hyland, as administrator of one Baxter, it appeared that Baxter died on May 27, 1862, intestate, leaving a widow, Bridget, and three infant children; that on June 5, 1862, the said George Hyland and the widow were appointed administrators; that Hyland took possession of the personal estate, consisting of livery property, continuing the livery business until August, 1862, when he sold the property on terms of credit, under which the last payment was not made until September, 1866. An inventory was made soon after the appointment of the administrators, but was not filed until in June, 1872; nor was any guardian appointed for the children until in May, 1872.

Upon the hearing before an auditor, appointed to examine the accounts of the administrators and report thereon, evidence was given tending to show that the widow and her family were substantially without means of support, other than such as were derived from her services and the estate of the deceased, except that a small amount was received by her from the rent of a house in her possession; that the administrator, Hyland, from time to time furnished her with money and articles of merchandise, which she received in her capacity as administratrix and appropriated to the support of the minor children.

*Held,* that as no general guardian had been appointed for the infant defendants, and no one was entitled to receive any portion of the fund in the hands of the administrators, the acting administrator had no legal right to hand over to his co-administrator any of the assets in his hands, or to furnish supplies for the family of the intestate at the expense of the estate.

That to establish an equitable right in behalf of the administrator to an allowance or credit, as against the estate of the children, the administrator must show that he acted with good faith, and that the necessities of the minors required the expenditure of the moneys.

That the Surrogate's Court had jurisdiction to fully adjust and award any equities existing between the parties and in behalf of Hyland.

*Hyland* v. *Baxter* (98 N. Y., 610; affirming S. C., 31 Hun, 354).

That the fact that it might be difficult to make the apportionment between the children, so as to definitely and correctly charge their respective shares with the amounts supplied, would not justify the court in refusing to make such apportionment, as the same difficulty would have existed in the accounting of the widow, if she had been the general guardian of all the children, as they were of one family.

A rule which requires the severance of a family for the protection of a guardian in his account, would be harsh and the consequences unnatural.

The evidence showed that a considerable portion of the amount claimed by the administrator was for goods sold from his store, he being engaged in carrying on mercantile business for profit.

*Held,* that unless special reasons were shown to exist in this case those amounts should be disallowed under the rule prohibiting trustees from dealing with infant beneficiaries.

APPEAL from a decree of the surrogate of Livingston county, made upon accounting of George Hyland, as administrator, etc., of Bernard Baxter, deceased.

It appears that Bernard Baxter died intestate, May 27, 1862, leaving Bridget Baxter, his widow, and three infant children: Mary, aged seven years; Bernard, aged two years; and Ella, aged seven months. And June 5, 1862, Bridget Baxter, the widow, and George Hyland were appointed administrators. The personal estate consisted of livery property, amounting, as per appraisal and inventory, to $1,481.

The administrator, Hyland, took possession of the property, and for a short time, and until he could sell it, continued the livery business. He sold it in August, 1862, on terms of credit, which required monthly payments of twenty-five dollars each and interest. The purchase-money was received by him in installments, and the payment was completed in September, 1866. An inventory was made shortly after the appointment of the administrators, but it was not filed until June, 1872, when it was done pursuant to the order of the surrogate, made in proceeding instituted by the guardian of the infants. There was no guardian for the infants until Wendell Zimmer was so appointed in May, 1872. And upon his petition the order was made, pursuant to which Hyland filed his account as administrator. It was then referred to an auditor, to examine and report thereon.

Upon the hearing, the evidence tended to prove that the widow and her family were substantially without means of support, other than such as were derived from her services and the estate of the deceased, except that a small amount was also received by her from the rent of a house in her possession; and that from time to time the administrator, Hyland, furnished her with money and articles of merchandise, and paid some taxes assessed to her on houses and lots in her possession.

| | | |
|---|---:|---:|
| The auditor reported that the proceeds of the personal property which came to Hyland's hands were | $1,481 | 00 |
| And interest as stated in his account | 140 | 00 |
| Interest surcharged | 100 | 00 |
| And receipts from use of the livery property between May 26 and July 31, 1862 | 151 | 87 |
| Making | $1,872 | 87 |
| And that he should be credited with the payment of debts of intestate, funeral expenses and commissions, amounting to | 631 | 60 |
| Leaving in his hands for distribution as of September 1, 1867 | $1,241 | 27 |
| Treating one-third as paid to the widow | 413 | 75 |
| Leaving for distribution to the next of kin | $827 | 52 |
| Adding interest from September 1, 1867, to time of his report, September 19, 1874..... $415 23 | | |
| Less commission on that sum.............. 10 38 | 404 | 85 |
| Producing a balance in his hands | $1,232 | 37 |

The auditor found that the administrator, Hyland, paid the widow chiefly in articles of merchandise, with some money, equal to the distributive shares of her and the children in the estate, being the same charged in his account, intending such as payment of their distributive shares, but that such payment in his opinion was unauthorized by law, and could not be allowed to him as a credit upon his accounting as administrator in that court; that she received the money and merchandise, claiming them in her right as administratrix, and appropriated the same to the support of the minor children. And on bringing into court the widow, as a party to the proceeding of accounting, the auditor afterward made a further report that she had expended the distributive shares of the minor children "in providing for their necessaries during their minority, and that if she had expended the same as their general guardian, the said payment would have been allowed to her, on her accounting as guardian," but that in his opinion she, as administratrix, had no

legal right to make such payments, and such court had no power to allow such payments to the administrators as a credit. And consequently they must be jointly charged as against the next of kin, but that, as between the adminstrators, Hyland was entitled to a decree that the widow pay the same, and that she repay to him so much as. he shall pay to the next of kin.

The surrogate sustained exceptions to the finding of the auditor, that the money and merchandise received by the widow from Hyland were appropriated by her for the support of the minor children, or for their necessary support during their minority. And in other respects apparently confirmed the report, and a decree was entered December 22, 1876, from which this appeal was taken by the administrator, Hyland, who afterwards died, and the appeal was continued in the name of the present appellants. And the widow having afterwards also died, Bernard Baxter, as administrator of her estate, was substituted as a respondent.

*Oscar Craig*, for the appellants.

*D. W. Noyes* and *Charles J. Bissell*, for the respondents.

BRADLEY, J. :

The embarrassment of the appellants arises mainly out of the failure of their intestate to observe the statutory direction to him as administrator of the estate of Bernard Baxter, deceased. He, as such, took possession of the personal estate and converted it into money. He was called upon by the widow of the decedent, his coadministrator, for money and for merchandise, and he furnished them to her. She and her three minor children constituted her family, and all of them remained at home with her for about five years after the death of her husband, when the eldest child, Mary, went out to work, and did so a considerable portion of the time thereafter.

It may fairly be inferred or assumed, that the money and merchandise so received by the widow of Hyland was used by her in the support of her family, and that some benefit was thus received by all of the children. And it is quite evident, as the court below understood, that Hyland furnished to the widow the merchandise and money in good faith, believing that he was properly supplying the family with the means of support from the estate in his hands

of his intestate, and that it was used for such purpose. The family had no means of support other than from the labor of the mother, and this personal estate in the hands of Hyland, except a small amount of rent received for the use of a house, until the expiration of five years after the death of Baxter, when some relief was furnished by the absence and labor of the one daughter. The acting. administrator had no legal right to hand over to his coadministrator any of the assets in his hands, or to furnish supplies for the family of his intestate, at the expense of the estate.

The infant children were not represented by any general guardian, and no one was entitled to receive for them any portion of the fund in his hands. And the question arises whether any equities exist in behalf of this administrator, which fairly require any allowance or credit to him, as against the shares of the children in the estate. When the rights of infants are involved, a trustee is usually held to a strict accountability in the line of his duty as such. (*Howell* v. *Mills*, 53 N. Y., 322.) And equities are found in his behalf in case of departure from his legal duty, in the event only of entire good faith on his part, and when it is subservient to the necessities of the minors beneficially interested. The denial of the right to break in upon the capital of funds held for infants, or to obtain reimbursement by the trustee or guardian so doing, has been somewhat rigorously adhered to. (2 Perry on Trusts, § 618; *Walker* v. *Wetherell*, 6 Vesey, 473.)

But in this State that rule is not inflexible, and circumstances may arise to justify the impairment of the principal of the fund for maintenance, and when they have so existed and produced expenditure made in good faith, equitable considerations will be applied to reimburse the trustee. (*In re Bostwick*, 4 Johns. Ch., 100; *Hill* v. *Hanford*, 11 Hun, 536.) Such allowance of credit, however, for past disbursements will be given only in cases where the court would have permitted it to be made on prior application in behalf of the infant beneficiary. While the failure of the administrator to file the inventory of the estate or to render and settle his account until required by proceedings taken against him for those purposes are circumstances of negligence and disregard of duty, they do not necessarily deny to him good faith and purposes in dealing with the fund.

The personal estate which came to him was such, that he was required to sell it on a long installment credit, which did not wholly result in proceeds to him until four years afterwards, and in the meantime the widow was calling upon him for money and goods for the use of her family which he supplied, and which was thereafter continued in like manner. The view of the auditor, as expressed by his opinion, was that the Surrogate's Court had no power to consider the equities, if any existed in behalf of the administrator, Hyland, with a view to allowance to him of any credit for the moneys and merchandise so advanced by him. And the surrogate did not, in his opinion, expressly adopt or disaffirm that proposition. He placed the confirmation of the report on other grounds.

At all events the apprehension of want of power in that court to treat the equities claimed by Hyland, it seems, induced him to bring an action in the Supreme Court for such alleged purposes, in which he, failing to get relief at the trial court, sought review at the General Term, where the judgment was affirmed (*Hyland* v. *Baxter*, 31 Hun, 354), and on appeal to the Court of Appeals it was there held that the decree of the Surrogate's Court was *res judicata*, because that court had jurisdiction to fully adjust and award any equities existing between the parties and in behalf of Hyland, and that his remedy and relief, if he was entitled to any, must be found in the review of such decree, and the judgment was affirmed. (98 N. Y., 610.)

If it be assumed that the administrator was equitably entitled to allowance of credit in his account for moneys furnished by him to the support of the infant beneficiaries, there is some difficulty in making the apportionment between them, so as definitely and correctly to charge their respective shares with the amounts supplied. This is one ground upon which the surrogate put his conclusion as appears by his opinion. And such was the view expressed in the opinion of the General Term on review of the judgment in the action before mentioned on the facts there presented. It is contended that by such decision the questions here were disposed of adversely to the appellants.

That was a review of the findings of the trial court, and they were entitled to the most favorable view which could legitimately be

taken of them upon the evidence. And, as appears by the determination finally made by the Court of Appeals, such question was not properly in the action for consideration. Although the matter of the accounting and determination were theoretically had before the surrogate, the auditor was instrumental in taking the evidence and making the report upon which the decree was directed. And his view that there was no power in that court to determine the equities, if any there were, excluded from his consideration that question. And it is not apparent that the surrogate entertained a contrary view of the jurisdiction of his court in that respect. The question at least was one then not free from difficulty. And there is reason to apprehend, that the subject of controversy here may not have received the attention which it would have had if the power to extend the inquiry beyond the legal duties of the administrator, and to equitable considerations, had been clearly assumed by the Surrogate's Court. The auditor found substantially that these funds went to the support of the family. There is no specific finding of necessity of the infants for such contribution to their maintenance. And in the auditor's view of want of power, such fact was necessarily deemed by him of no importance.

The finding of such fact we cannot say is not justified by the evidence. It tends to prove that on the death of Baxter the family were substantially without means of support, other than such as the estate of the decedent might supply. The question of apportionment between the infants of the fund, which may be deemed as applied to their joint maintenance and support, is one of some difficulty. But it does not appear that no means are, or can be, furnished by the evidence to apply, to greater or less extent, a rule for that purpose. The question of its accuracy must necessarily be that of judgment, having in view all the circumstances, which should be carefully exercised for the protection of their interests, respectively.

It may be seen that the same difficulty may have existed in the accounting of the widow, if she had been the general guardian of all the children, as they were one family. A rule which requires the severance of a family for the protection of a guardian in his account, would be harsh, and the consequence unnatural. This matter should go back to the surrogate for rehearing, unembarrassed by any question of power or jurisdiction.

But unless special reasons appear, and are applicable to the account for merchandise rendered in this case, it should not be allowed as against the infants' fund. The permission of a trustee to deal with infant beneficiaries, by selling to them his property, and thus charging the fund, cannot, without liability to great abuse, be permitted. And the rule which ordinarily denies such right is, for obvious reasons, a salutary one.

The administrator was in the mercantile business. A considerable portion of his account rendered is for goods sold from his store. This business was carried on for profit. How much profit was within the prices charged does not, and probably cannot, appear. While there may be circumstances which will justify the allowance of such a claim, and when credit should be permitted, it is safer, generally, to apply the rule somewhat rigorously against the allowance of such dealing with the funds of infants by trustees than to indulge departure from it.

In the view taken of this case, we see no basis upon which direction can be given here which will enable the parties to obviate a rehearing. The decree should, therefore, be reversed and a rehearing had of the matter of accounting in the Surrogate's Court, costs of this appeal to abide the final award of costs.

SMITH, P. J., and BARKER, J., concurred.

Decree reversed and rehearing ordered in the Surrogate's Court of Livingston county, costs of this appeal to abide the final award of costs.